# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SANDOR ANIVAL CORDOVA
CARBALLO, *et al.*,

Petitioners,

v.

WILLIAM BARR, *et al.*,

Respondents.

Case No.: 2:20-cv-01315-APG-BNW

**Order Granting in Part Motion to Dismiss**

[ECF No. 32]

This lawsuit was filed by 26 individual immigration detainees who assert that their federal constitutional rights have been violated because the detention center where they are housed has used inadequate measures and medical care to protect them from contracting COVID-19.  The defendants move to dismiss the lawsuit, raising the question whether this action is properly brought, in part, as a habeas action.  I determine that it is not, so I will grant the motion to dismiss in part and dismiss the habeas claims.  The case will proceed on the plaintiffs' civil rights claims.

On July 16, 2020, Sandor Anival Cordova Carballo and 25 other individuals[1] held in civil immigration detention at the Nevada Southern Detention Center (NSDC),[2] in Pahrump, Nevada, filed a "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" (Complaint). ECF No. 1.  The Complaint names the following defendants: William Barr,

---

[1] There are 26 plaintiffs, counting both those identified in the caption of the Complaint and those identified in the body of the Complaint.  There is one person listed in the caption that is not identified in the body, and there is one person identified in the body that is not listed in the caption.

[2] NSDC is operated by CoreCivic, which is a private entity. *See* Response to Petition for Writ of Habeas Corpus (ECF No. 12), p. 2; *see also* https://www.corecivic.com/ (all internet materials as last visited September 29, 2020).

Attorney General of the United States; Chad Wolfe, Acting Secretary of the Department of Homeland Security; Matthew T. Albence, Deputy Director and Senior Official Performing the Duties of Director, U.S. Immigration and Customs Enforcement (ICE); Thomas E. Feeley, District Director of the Salt Lake City District Office, ICE; and Brian Koehn, Warden, NSDC. The defendants are sued in their official capacities. Defendants Barr, Wolfe, Albence, and Feeley move to dismiss, arguing that the plaintiffs' claims are not cognizable in a habeas action under 28 U.S.C. § 2241, and therefore this court lacks subject matter jurisdiction over the claims.

Federal courts are courts of limited jurisdiction, with the power to hear cases only when authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008). When subject matter jurisdiction is challenged in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the burden of establishing subject matter jurisdiction is on the party invoking the court's jurisdiction. *See id.* The court presumes a lack of subject matter jurisdiction until the plaintiff establishes that it exists. *Kokkonen*, 511 U.S. at 377.

Federal Rule of Civil Procedure 12(b)(6) provides for motions to dismiss for failure to state a claim upon which relief can be granted. A Rule 12(b)6) motion tests the legal sufficiency of the plaintiff's claims. Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th

1 Cir. 1996).  The court should "begin by identifying pleadings [allegations] that, because they are

2 no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*,

3 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint,

4 they must be supported with factual allegations." *Id.*

5     The notice pleading standard applicable in ordinary civil actions does not apply in habeas

6 corpus cases; habeas petitions must meet heightened pleading requirements. *See McFarland v.*

7 *Scott*, 512 U.S. 849, 856 (1994); *see also* Rule 4, Rules Governing Section 2254 Cases in the

8 United States District Courts, Advisory Committee Notes ("[N]otice' pleading is not sufficient,

9 for the petition is expected to state facts that point to a 'real possibility of constitutional error."

10 (quoting *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970))).

11     The general nature of the COVID-19 pandemic, as reported by the Centers for Disease

12 Control and Prevention (CDC), is now well-known. https://www.cdc.gov/coronavirus/2019-

13 nCoV/index.html (all internet materials as last visited September 29, 2020).[3]  The CDC describes

14 the pandemic, which is caused by a novel coronavirus, SARS-CoV-2, as "a serious global health

15 threat." https://www.cdc.gov/coronavirus/2019-ncov/global-covid-19/index.html.  As of

16 September 29, 2020, the CDC reported 7,095,422 total cases in the United States, and 204,328

17 total deaths in the United States from the disease. https://covid.cdc.gov/covid-data-tracker

18 /#cases_totalcases.  COVID-19 is highly contagious—"spreading very easily and sustainably

19 between people"—and it is thought to spread "between people who are in close contact with one

20 another (within about 6 feet)," "through respiratory droplets produced when an infected person

21 coughs, sneezes, or talks." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick

22

23

[3] This information regarding COVID-19, as currently provided to the public by the CDC, is provided as background for this order.  I make no findings of fact here.

3

/how-covid-spreads.html. The CDC advises that it may be spread by people who are not showing

symptoms. *Id.* The CDC advises that the best ways to protect oneself and others is to know how

it spreads; wash hands often; avoid close interpersonal contact; cover the mouth and nose with a

mask when around others; cover the mouth when coughing or sneezing; clean and disinfect

frequently touched surfaces daily; and monitor health daily. https://www.cdc.gov

/coronavirus/2019-ncov/prevent-getting-sick/prevention.html. The CDC advises that some

people are more likely than others to become severely ill from COVID-19, and that this includes

racial and ethnic minority groups, the elderly, and people with certain underlying medical

conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

There is currently no vaccine to prevent COVID-19. https://www.cdc.gov/coronavirus

/2019-ncov/prevent-getting-sick/prevention.html.

On March 12, 2020, Governor Steve Sisolak issued a declaration of emergency in the

State of Nevada due to COVID-19. https://gov.nv.gov/News/Emergency_Orders/2020/2020-03-

12_-_COVID-19_Declaration_of_Emergency. On March 13, 2020, President Donald J. Trump

declared the COVID-19 outbreak in the United States a national emergency.

https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-

concerning-novel-coronavirus-disease-covid-19-outbreak/. Correctional and detention facilities

present unique challenges with respect to control of SARS-CoV-2 transmission among

incarcerated and detained persons, staff, and visitors. https://www.

cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-

detention.html.

In their Complaint, the plaintiffs allege that the defendants have "failed miserably to take timely and necessary action to reduce the risk of [COVID-19] to detained persons and staff" at NSDC. ECF No. 1, p. 2.  The allege:

> People [immigration detainees at NSDC] sleep on bunk beds in crowded cells or dormitories.  They eat meals at packed tables, seated shoulder to shoulder.  They use communal bathrooms.  They have little or no access to hand sanitizer, soap, gloves, or masks.  They do not clean.  They are in the constant presence of guards, officers, and staff who continually rotate in and out of the facility, each time risking transmission of the virus to those inside and outside the detention center.

> *   *   *

> Detained persons at Nevada Southern [NSDC] cannot maintain a six-foot distance from other individuals: they sleep, eat, bathe, and engage in other activities in close proximity with each other.  Cleaning standards in Southern Detention [NSDC] common areas and Plaintiffs' cells are shockingly inadequate, and cleaning supplies are not always available.  More importantly to note that neither Southern Detention nor ICE has any of its personnel clean the facility, nor contract with a third-party contractor to clean the facility; it is reprehensible that sick detainees are cleaning the facility and thereby spreading the novel coronavirus.

> *   *   *

> Persons detained at Nevada Southern are housed together in units, which, according to Plaintiffs, hold a flexible number of 35 to 40 individuals.  The units house individuals in close quarters, well under the distance of six feet apart that the CDC recommends.  Within the unit, most individuals' beds are stacked close to others, so that you always have someone at your head and/or your feet.  These individuals are held in this same space all day, particularly when that unit is in "cohort" status.  They do not leave, they do not get fresh air, they are all stuck with each other.  They share the same restrooms, sinks and tables to eat.  They do not leave.

> Not only is social distancing essentially impossible in these conditions, but the hygienic situation in the facility is inadequate to abate the spread of COVID-19.  The facility relies on detainees who "work" for $1 a day to clean the tables with no employees or third party contractors coming in to clean.  They are not provided with sufficient protective equipment, such as gloves or masks.  Showers, which all individuals within a unit must share, are not cleaned after every use.  Plaintiffs have reported that cleaning supplies used in the facility are highly diluted.  They describe different color sprays that they must use that seem

to differ.  There is no rigorous sanitation and they are all left to fend for themselves and hope that their body can handle the infection.

Individuals detained at Nevada Southern also lack access to sufficient personal hygiene products.  Detainees may receive soap, but it is only one small bar of soap every few days—an insufficient amount given the rigorous handwashing required to avoid contracting COVID-19.  No hand sanitizer is available.  Nevada Southern has not been providing detained persons adequate protective equipment such as masks and gloves.  Detention center staff themselves are not consistently wearing masks or gloves and are not practicing social distancing.

Despite these conditions and the existing positive COVID-19 cases, Nevada Southern does not appear to be conducting widespread testing.  Many detainees report flu-like symptoms consistent with COVID-19 but are not tested.  Nevada Southern staff may sometimes provide sick detainees with Tylenol or ibuprofen pills, Nyquil or tell them to drink water.  However, one Plaintiff was so desperate for relief and not provided any relief from the staff, he had to buy his own Tylenol from the Canteen.  Even in these units where individuals have tested positive for the virus, Nevada Southern staff have informed detained persons that they would only test those with severe symptoms or that testing everyone is not necessary or that they were making it up to so that they could be released.

\*   \*   \*

Moreover, to the extent that detained persons are tested, even positive test results are not immediately communicated and acted upon: at least one detained person was informed, informally by a passing guard, not Nevada Southern officials, that he had tested positive for COVID-19.

\*   \*   \*

Plaintiff Bonnett … who tested positive for the virus, was moved from the medical unit, where he did not receive any treatment, into the "hole" that has been converted into their isolation unit.  Once there he was left to his own devices without medication, treatment, or medical evaluation.  He has to clean his own room and pray that his body will heal itself.  He was told that if he appears "better" in fourteen days then he will be moved back to his unit.

*Id*. at 3, 7, 28–30.  The plaintiffs allege that the defendants have failed to implement the CDC's guidance for detention facilities. *See id*. at 24.

6

Most or all of the 26 named plaintiffs appear to be members of racial or ethnic minority groups; six of the plaintiffs are 45 years of age or older (one is over the age of 60); four claim to have underlying medical conditions. *See id*. at 9–19.  Of the 26 named plaintiffs, 24 allege that at some point they either tested positive for COVID-19 or exhibited symptoms of the disease but were not tested. *See id*.[4]

The plaintiffs invoke the court's subject matter jurisdiction "pursuant to 28 U.S.C. §§ 2241 (habeas corpus), 1331 (federal question), 1346 (original jurisdiction), 1361 (Mandamus Act), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause)." *Id*. at 8–9.  They assert:

> This Court has the power in equity to issue declaratory and injunctive relief for violations of the Constitution by federal officials. *See Ex Parte Young*, 209 U.S. 123 (1907); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 620 (1912) (applying *Ex Parte Young* principle to federal government officials); 5 U.S.C. § 702.

> This Court may grant relief under 28 U.S.C. §§ 2241, 2243 (habeas corpus), 2201-02 (declaratory relief), 1651 (All Writs Act), 5 U.S.C. § 702 (judgment against U.S. officers), Federal Rule of Civil Procedure 65 (injunctive relief), Federal Rule of Civil Procedure 23 (class action), as well as the Fifth and Eighth Amendments to the U.S. Constitution.

*Id*. at 9; *see also id*. at 35–36 (asserting that federal courts have broad power to fashion equitable remedies to address constitutional violations in carceral institutions (citing *Hutto v. Finney*, 437

---

[4] According to the defendants, on August 25, 2020 the 20 plaintiffs then still at NSDC were tested for the SARS-CoV-2 virus; the defendants reported that all tested negative. *See* Joint Status Report (ECF No. 35), p. 2; Respondents' Status Report (ECF No. 36), p. 1; Second Status Report (ECF No. 42), pp. 2, 5.  As of September 29, 2020, ICE reported on its website that there were three confirmed COVID-19 cases at NSDC then under isolation or monitoring, and a cumulative total of 10 detainees at NSDC had tested positive for COVID-19 while in ICE custody since testing began in February 2020. https://www.ice.gov/coronavirus (all internet materials as last visited September 29, 2020).

1  U.S. 678, 687 n.9 (1978), and *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 861 (9th

2  Cir. 1992))).

3      Plaintiffs assert that they are civil detainees and claim that the conditions at NSDC, with

4  respect to the threat posed by COVID-19, violate their rights under the Fifth Amendment to the

5  United States Constitution. *See* ECF No. 1, pp. 31–34, 37–40.   They seek release from

6  detention, a declaration "that the conditions under which Plaintiffs and others are confined at

7  Nevada Southern place Plaintiffs at an unreasonable risk of contracting severe illness and death,

8  in violation of the Due Process Clause," and other appropriate relief. *Id.* at 40; *see also id.* at 8

9  (requesting "intervention from this Court to align ICE's operation of Nevada Southern with CDC

10  guidance and public health principles" and "various improvements to, and ongoing monitoring

11  of, detention conditions at Nevada Southern, and the staggered release of remaining Plaintiffs

12  until necessary social distancing and hygiene measures can be sustained").

13      Federal law provides for two primary means for prisoners to seek relief on complaints

14  related to their imprisonment: petitions for writ of habeas corpus and civil rights complaints. *See*

15  *Muhammad v. Close*, 540 U.S. 749, 750 (2004); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir.

16  2016).  "Challenges to the validity of any confinement or to particulars affecting its duration are

17  the province of habeas corpus." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)).

18  Claims involving the circumstances of the plaintiff's confinement may be presented in civil

19  rights actions. *Id.*  Under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

20  U.S. 388 (1971), a plaintiff may, in a civil rights action, sue a federal officer in his or her

21  individual capacity for damages for violating the plaintiff's constitutional rights. *See Bivens*, 403

22  U.S. at 389.  And—as is partially the case here—a plaintiff may sue a federal officer in his or her

23

official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable

powers, and seek injunctive relief to remedy alleged constitutional violations.

"The Supreme Court has 'long held that federal courts may in some circumstances grant

injunctive relief against' federal officials violating federal law." *Sierra Club v. Trump*, 929 F.3d

670, 694 (9th Cir. 2019) (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27

 (2015)); *Armstrong*, 575 U.S. at 327 ("The ability to sue to enjoin unconstitutional actions by

state and federal officers is the creation of courts of equity, and reflects a long history of judicial

review of illegal executive action, tracing back to England."); *Corr. Servs. Corp. v. Malesko*, 534

U.S. 61, 74 (2001) ("[I]njunctive relief has long been recognized as the proper means for

preventing entities from acting unconstitutionally."); *Bacon v. Core Civic*, No. 2:20-cv-00914-

JAD-VCF, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020).

This action, as pleaded by the plaintiffs, is a hybrid habeas and civil rights action.  The

Complaint includes both claims for habeas corpus relief (*i.e.* release from NSDC) and claims for

civil rights relief (*i.e.* injunctive and/or declaratory relief).  In my view, however, in light of the

factual allegations on which the claims rely—*e.g.*, allegations regarding the amount of space in

which detainees are housed, inadequate cleaning, failure to provide detainees with items

necessary to protect them from COVID-19, insufficient testing for COVID-19, insufficient

medical care—this action is a conditions-of-confinement case.  Simply put, the plaintiffs seek

relief on account of the conditions of their confinement.  They do not claim any illegality

regarding the reasons for their detention or its duration.

Of course, it could be said that in a general sense the fact of the plaintiffs' detention is the

reason they are subject to the alleged constitutional violations.  Certainly if they were not

detained at NSDC, they would not be subject to the alleged constitutional violations.  But that

1  can be said in any conditions-of-confinement case.  But that cannot be determinative of whether

2  an action is properly a habeas action or a civil rights action, as it would render habeas

3  jurisdiction available in every conditions-of-confinement case.

4      The Supreme Court has not explicitly foreclosed habeas corpus jurisdiction over all

5  conditions-of-confinement claims. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 (2017) (leaving

6  open the question whether immigration detainees challenging "large-scale policy decisions

7  concerning the conditions of confinement imposed . . . might be able to challenge their

8  confinement conditions via a petition for a writ of habeas corpus"); *Boumediene v. Bush*, 553

9  U.S. 723, 792 (2008) (declining to determine "the reach of the writ with respect to claims of

10  unlawful conditions of treatment or confinement"); *Bell v. Wolfish*, 441 U.S. 520, 526, n. 6

11  (1979) (leaving for "another day the question of the propriety of using a writ of habeas corpus to

12  obtain review of the conditions of confinement"); *Preiser*, 411 U.S. at 499 ("When a prisoner is

13  put under additional and unconstitutional restraints during his lawful custody, it is arguable that

14  habeas corpus will lie to remove the restraints making custody illegal.").

15      The Ninth Circuit has similarly left open the question of habeas jurisdiction over

16  conditions-of-confinement claims by federal prisoners.  In *Nettles v. Grounds*, 830 F.3d 922 (9th

17  Cir. 2016), a state prisoner filed a habeas action challenging a prison disciplinary action on

18  constitutional grounds, claiming the action could affect his eligibility for parole.  The Court of

19  Appeals held that because the prisoner's claim did not fall within the "core of habeas corpus"—

20  that is, it did not necessarily implicate the "fact or duration" of his conviction or sentence—it

21  must be brought in a civil rights action under 42 U.S.C. § 1983. *Nettles*, 830 F.3d at 925 (quoting

22  *Preiser*, 411 U.S. at 487); *see also Nettles*, 830 F.3d at 931, 934.  The Court of Appeals noted

23  that the Supreme Court has suggested that civil rights actions under 42 U.S.C. § 1983 are the

exclusive vehicle for state prisoners' claims that fall outside the core of habeas. *See id*. at 929–31

(citing *Muhammad*, *Wilkinson*, and *Skinner v. Switzer*, 562 U.S. 521 (2011)).

> The [Supreme Court] has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action. *See*, *e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (characterizing the Court's precedents as holding "that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration"). Based on our review of the development of the Court's case law in this area, we now adopt the correlative rule that a § 1983 action is the exclusive vehicle for claims brought by state prisoners that are not within the core of habeas corpus.

*Nettles*, 830 F.3d at 927. However, the Court of Appeals declined to address the question

whether a civil rights action is the exclusive vehicle for a claim by a federal prisoner not at the

core of habeas—which is the question raised by the motion to dismiss here. *See id*. at 931

("Because the case before us involves a state prisoner's action under 28 U.S.C. § 2254, we need

not address how the standard suggested in *Skinner* and adopted here applies to relief sought by

prisoners in federal custody."); *see also Workman v. Mitchell*, 502 F.2d 1201, 1208 n.9 (9th Cir.

1974)) (stating, in dicta, that it appeared "fairly well established that . . . federal habeas corpus

actions are now available to deal with questions concerning both the duration and the conditions

of confinement").

Federal district courts have reached differing conclusions whether 28 U.S.C. § 2241

affords subject matter jurisdiction for federal prisoners' conditions-of-confinement claims in the

context of the COVID-19 pandemic.[5]  I conclude that this court does not have jurisdiction over

---

[5] District courts finding there to be jurisdiction under § 2241 in such cases include *Zhang v. Barr*, No. ED CV 20-00331-AB (RAOx), 2020 WL 1502607, at *3 (C.D.Cal. March 27, 2020); *Ortuno v. Jennings*, No. 20-cv-02064-MMC, 2020 WL 1701724, at *2 (N.D.Cal. April 8, 2020);

1 the plaintiffs' habeas claims under 28 U.S.C. § 2241, and that the plaintiffs have not stated viable

2 claims for habeas corpus relief.

3       In light of precedent governing the general scope of habeas corpus jurisdiction, this does

4 not appear to be a habeas case.  If the plaintiffs succeed in showing that the conditions under

5 which they are held violate the Fifth Amendment by putting them in excessive danger from

6 COVID-19, or because they have received inadequate medical care in relation to COVID-19,

7 that will not necessarily mean they must be released from detention.  The Complaint not only

8 seeks their release from detention, it also seeks changes to the conditions under which they are

9 held.  For example, the plaintiffs request "intervention from this Court to align ICE's operation

10 of Nevada Southern with CDC guidance and public health principles" and "various

11 improvements to, and ongoing monitoring of, detention conditions at Nevada Southern, and the

12 staggered release of remaining Plaintiffs until necessary social distancing and hygiene measures

13 can be sustained." ECF No. 1, p. 8.  The plaintiffs state in their Complaint that the only effective

14 remedy would be their release, but those statements are wholly conclusory and unsupported by

15 any factual allegations explaining why the conditions at NSDC could not be altered to

16

17 *Bent v. Barr*, 445 F.Supp.3d 408, 413–14 (N.D. Cal. April 9, 2020); *Habibi v. Barr*, 445 F.Supp.3d 990, 995 n.2 (S.D. Cal. April 14, 2020); *Perez v. Wolf*, 445 F.Supp.3d 275, 293 (N.D. Cal. April 14, 2020); *Thakker v. Doll*, 451 F.Supp.3d 358, (M.D.Pa. March 31, 2020); *Vasquez-Berrera v. Wolf*, 4:20-CV-1241, 2020 WL 1904497, at *3–5 (S.D. Tex. Apr. 17, 2020);
19 *Ruderman v. Kolitwenzew*, No. 20-cv-2082, 2020 WL 2449758, at *7–8 (C.D. Ill. May 12, 2020).

20       District courts declining habeas jurisdiction in such cases include *Alvarez v. Larose*, 445 F.Supp.3d 861, 865–68 (S.D. Cal. May 9, 2020); *Wilson v. Ponce*, No. CV 20-4451-MWF (MRWx), 2020 WL 3053375, at *9–10 (C.D. Cal. June 8, 2020); and *Hunter v. Martinez*, No. 2:20-cv-05121-JAK (SHK), 2020 WL 3258398, at *3–5 (C.D.Cal. June 12, 2020); *Wragg v. Ortiz*, No. 20-5496 (RMB), 2020 WL 2745247, at *12–19 (D.N.J. May 27, 2020); *Codner v. Choate*, No. 20-cv-01050-PAB, 2020 WL 2769938, at *4-7 (D.Co. May 27, 2020); *Mescall v. Hemingway*, No. 2:20-11110, 2020 WL 4584028, at *3 (E.D. Mich. Aug. 10, 2020).

1    sufficiently protect the plaintiffs from COVID-19 and provide them with adequate medical care.

2    And those conclusory allegations are contradicted by the plaintiffs' requests for injunctive relief

3    regarding the particulars of the conditions of their confinement.

4            The court in *Mescall v. Hemingway*, No. 2:20-11110, 2020 WL 4584028 (E.D. Mich.

5    Aug. 10, 2020), made this point in dismissing a similar habeas action:

6            Petitioner's claims are non-cognizable in habeas; Petitioner does not
         allege that no set of conditions of confinement would remedy the risk caused by
7        Covid-19.  Petitioner alleges that insufficient testing of the inmates and staff is
         being conducted; Petitioner alleges that some prison staff members are not
8        following protocols for wearing face masks; Petitioner alleges that there is
         insufficient social distancing; Petitioner claims that there is insufficient sanitary
9        equipment being provided to the inmates.  Petitioner argues that the risk of Covid-
         19 transmission at FCI-Milan could be alleviated if facility wide testing for
10       Covid-19 was ordered, if everyone was ordered to wear a face mask and to
         socially distance, and if adequate sanitary equipment was provided to all inmates.
11       Petitioner does not allege that "there are no conditions of confinement sufficient
         to prevent irreparable constitutional injury" at FCI-Milan.  Only "where a
12       petitioner claims that no set of conditions would be constitutionally sufficient the
         claim should be construed as challenging the fact or extent, rather than the
13       conditions, of the confinement." [*Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir.
         2020) (citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011))].
14       Petitioner's claims are non-cognizable in a habeas petition, because he challenges
         the conditions of confinement, rather than the fact or extent of his confinement.

15

16   2020 WL 4584028, at *3.  I agree with this analysis and it applies in this case.  Here there is no

17   colorable claim supported by factual allegations that release from custody would be the only

18   effective remedy.  Thus, habeas jurisdiction is lacking because it is not alleged that the custody,

19   per se, is unconstitutional.  I will grant the motion to dismiss to the extent it seeks dismissal of

20   the plaintiffs' habeas corpus claims.[6]

21   _____

22   [6] I also note the practical difficulty, and potential unfairness, of proceeding in this case on both
     habeas and civil rights claims.  It appears that, if this case were to proceed in this hybrid form, a
23   recurring question would be whether habeas practice or general civil practice should control.
     The answer to that question would be unpredictable for the parties, and would inevitably have
     different ramifications for them depending on the procedural step under consideration.  It appears

1   I will deny the motion to dismiss to the extent it seeks dismissal of the plaintiffs' civil

2   rights claims.  Those claims invoke jurisdiction under 28 U.S.C. § 1331 and the court's inherent

3   equitable powers, and seek injunctive and declaratory relief against the defendants in their

4   official capacities.  The defendants make no showing that the court lacks subject matter

5   jurisdiction over those claims or that relief could not be granted on them.

6       The defendants also seek to dismiss as moot the claims asserted by those plaintiffs who

7   are no longer detained at NSDC. *See id.* at 13–14.  "Mootness is a threshold jurisdictional issue."

8   *S. Pac. Transp. Co. v. Pub. Util. Com'n of State of Or.*, 9 F.3d 807, 810 (9th Cir. 1993).  An

9   action is moot when a litigant no longer has a personal stake in the outcome of the suit. *See*

10  *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007).  The plaintiffs' remaining claims against

11  for injunctive or declaratory relief regarding the conditions at NSDC are moot as to the plaintiffs

12  no longer detained there.  Those plaintiffs no longer have a stake in (or would benefit from)

13  injunctive or declaratory relief.  The defendants have given notice that the following plaintiffs

14  are no longer detained at NSDC: Hector Perez Alvares, Mojahamed Betiche, Bambang Budiano,

15  Sandor Anival Cordova Carballo, Jose Rodolfo Castellanos, Jose Seron Figueroa, Edgar Ramirez

16  Garcia, Eduardo Gallardo Gonzalez, Jerardo Guerrora, Sudhamma Kukulpane, Julian Martin,

17  Israel Mendoza, and Yupanqui Sanchez.[7] *See* Motion to Dismiss (ECF No. 32), pp. 13–14;

18  Notice of Change of Status (ECF No. 40).  The plaintiffs have not contested that these plaintiffs

19  are no longer detained at NSDC.  All claims of these plaintiffs are dismissed as moot.

20      The defendants also seek dismissal of the claims by plaintiff Elmer Vazquez Reyes, who

21  is listed as a plaintiff in the caption of the Complaint but not mentioned in the body of the

22

23  that proceeding with this case to resolution as a hybrid habeas and civil rights action, as it is
    pleaded, would be impracticable and potentially unfair to one party or the other.

[7] The plaintiffs' names are spelled here as they are spelled in the Complaint.

1  Complaint.[8]  I will grant the motion with respect to him because he fails to state a claim upon

2  which relief may be granted.

3         As is discussed above, the motion will proceed on the civil rights claims of the remaining

4  plaintiffs.  At a status conference on September 22, 2020, I allowed the plaintiffs leave to amend

5  their Complaint by October 2, 2020.  In order to allow the plaintiffs time to take this order into

6  consideration in drafting their amended complaint, I will extend that deadline.  The plaintiffs will

7  have until October 9, 2020 to file an amended complaint.  Upon the filing of the amended

8  complaint, I will direct the Clerk's Office to treat this action, administratively, as a civil rights

9  action in all respects, including designation of the nature of the suit, filing fees, and screening of

10 the amended complaint.

11        I THEREFORE ORDER that the defendants' motion to dismiss **(ECF No. 32) is**

12 **GRANTED IN PART**.  All of the plaintiffs' habeas corpus claims are dismissed.  Additionally,

13 I dismiss all claims of plaintiffs Hector Perez Alvares, Mojahamed Betiche, Bambang Budiano,

14 Sandor Anival Cordova Carballo, Jose Rodolfo Castellanos, Jose Seron Figueroa, Edgar Ramirez

15 Garcia, Eduardo Gallardo Gonzalez, Jerardo Guerrora, Sudhamma Kukulpane, Julian Martin,

16 Israel Mendoza Mendoza, Yupanqui Sanchez and Elmer Vazquez Reyes.  In all other respects,

17 the motion is denied.

18 / / / /

19 / / / /

20 / / / /

21

22 ────────────

23 [8] In the Motion to Dismiss, the defendants identify "Elmer Ramirez Garcia" as the plaintiff listed in the caption but not mentioned in the body of the Complaint.  That is obviously a mistake. I understand the defendants to seek dismissal of the claims of Elmer Vazquez Reyes on this ground.

I FURTHER ORDER that the plaintiffs may file an amended complaint by **October 9, 2020**. If they fail to do so, the case will proceed on the pending claims.

Dated September 30, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE